1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MATTHEW G. JENNINGS,

11           Plaintiff,              No.  2:08-cv-1305 LKK CKD

12       vs.

13   A. MORELAND,                    ORDER AND

14           Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16           Plaintiff, an inmate of the California Department of Corrections ("CDCR"), seeks

17   relief pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds pro se with a second amended complaint

18   (Dkt. No. 100) against fifteen named defendants.  Plaintiff claims that defendants violated his

19   rights under the Eighth Amendment at California State Prison- Sacramento ("CSP-SAC") by

20   either (1) failing to protect him from physical assault at the hands of another inmate; or (2) being

21   deliberately indifferent to his serious medical needs by failing to assure that he received

22   appropriate medical care following the assault.  Defendants have moved for summary judgment

23   on some of plaintiff's claims and the matter is fully briefed.  (See Dkt. Nos. 185, 199, 204.)

24   I.    Motion for Summary Judgment

25           Summary judgment is appropriate when there exists "no genuine issue as to any

26   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

1

1   P. 56(c).  Under summary judgment practice, the moving party

2          always bears the initial responsibility of informing the district court
       of the basis for its motion, and identifying those portions of 'the
3          pleadings, depositions, answers to interrogatories, and admissions
       on file, together with the affidavits, if any,' which it believes
4          demonstrate the absence of a genuine issue of material fact.

5   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

6   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8   to interrogatories, and admissions on file.'"  Id.  Summary judgment should be entered, after

9   adequate time for discovery and upon motion, against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial.  See Id. at 322.  "[A] complete failure of proof

12  concerning an essential element of the nonmoving party's case necessarily renders all other facts

13  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

14  whatever is before the district court demonstrates that the standard for entry of summary

15  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16         If the moving party meets its initial responsibility, the burden then shifts to the

17  opposing party to establish that a genuine issue as to any material fact exists.  See Matsushita

18  Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

19  existence of a factual dispute, the opposing party may not rely upon the allegations or denials of

20  its pleadings but is required to tender evidence of specific facts in the form of affidavits or

21  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

22  Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate (1) that

23  the fact in contention is material, i.e., is a fact that might affect the outcome of the suit under the

24  governing law (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

25  Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and (2) that the

26  dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for

the nonmoving party (see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

However, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd., 810 F.2d 898, 902 (9th Cir. 1987).  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

The court "is not required to comb through the record to find some reason to deny a motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's attention to specific triable facts."  S.Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot be used to create an issue of

1   fact.  Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

2          On March 18, 2009 (Dkt. No. 21), and again on July 12, 2012 (Dkt. No. 187),

3   pursuant to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), the

4   court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the

5   Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en

6   banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7          Plaintiff's second amended complaint is verified under penalty of perjury.  It

8   therefore has the effect of an affidavit to oppose summary judgment "to the extent it is 'based on

9   personal knowledge' and 'sets forth specific facts admissible in evidence.'"  Keenan v. Hall, 83

10   F.3d 1083, 1090 n.1 (9th Cir. 1996).  However, unsworn declarations and letters not signed under

11   penalty of perjury do not constitute admissible evidence properly considered in ruling on a

12   motion for summary judgment.  See 28 U.S.C. § 1746 (unsworn declarations must state that the

13   matters asserted therein are true under penalty of perjury).

14      A.    Applicable § 1983 and Eighth Amendment Standards

15          Section 1983 requires that there be an actual connection or link between the

16   actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  42

17   U.S.C. § 1983; see also Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode,

18   423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right,

19   within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative

20   acts or omits to perform an act which he is legally required to do that causes the deprivation of

21   which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

22      1.    Failure to Protect

23          The Eighth Amendment's prohibition on cruel and unusual punishment imposes

24   on prison officials, among other things, a duty to "take reasonable measures to guarantee the

25   safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer,

26   468 U.S. 517, 526-27 (1984)).  "'[P]rison officials have a duty...to protect prisoners from

violence at the hands of other prisoners.'" <u>Farmer</u>, 511 U.S. at 833.

An Eighth Amendment failure to protect claim has two elements: (1) the condition complained of must be shown to present a substantial risk of serious harm, and (2) the defendant(s) must be shown to have possessed a sufficiently culpable state of mind.  <u>Id.</u> at 834.  The requisite state of mind "is one of 'deliberate indifference' to inmate health or safety."  <u>Id.</u>  The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.

### 2.    Deliberate Indifference to Serious Medical Needs

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  In order to be liable, an official must know of and disregard an excessive risk to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 832.  Two requirements must be met: (1) the deprivation must be, objectively, sufficiently serious; and (2) the prison official must be, subjectively, deliberately indifferent to inmate health or safety.  <u>Id.</u> at 834.  As to the subjective factor, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.  <u>See Id.</u>  In addition, harm, though not substantial, must have resulted from the indifference.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.  <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1059 (9th Cir. 1997).  Furthermore, when a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case."  <u>Hallett v. Morgan</u>, 296 F.3d 732, 745-46 (9th Cir. 2002).  Mere delay of medical treatment, "without more, is insufficient to state a

claim of medical deliberate indifference.  Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

      B.    Defendants Bartell[1] and Moreland

          1.    Undisputed Facts[2]

        On July 31, 2007, while plaintiff was performing cleaning duties as a third watch porter in the hallway of Building 4 of CSP-SAC's A-Facility, inmate Benjamin approached the door between the dayroom and the hallway; inmate Barrus was nearby.  (Dkt. No. 100 at 6; DUF #3.)  Benjamin demanded angrily that plaintiff seek to have the door between them opened.  (Id.)  Plaintiff understood Benjamin's statements to him to be a threat of physical assault.  (Dkt. No. 100 at 6; DUF #4.)  During these events, defendant Moreland (correctional officer working as the assigned Floor Officer) and defendant Bartell (correctional officer working as the assigned Control Officer) were stationed in the nearby control tower.  (Dkt. No. 100 at 7; DUF #5.)  Moreland and Bartell were responsible for providing security for inmates housed in the building and inmates engaged in various activities in the building's dayrooms by observing the activities of inmates in the dayrooms.  (Dkt. No. 185-4 ("Bartell decl.") at ¶4; Dkt. No. 185-3 ("Bartell decl.") at ¶4.)  The control booth has windows overlooking the building's floor and dayroom areas, as well as an intercom system linked to the dayrooms.  (Id.)  During inmates' program periods, the dayrooms are frequently filled with thirty or more inmates, along with a television blaring in the background.  (Id.)

        The next morning, on August 1, 2007, at approximately 7:53 a.m., plaintiff and Barrus were involved in a physical altercation in CSP-SAC's A-facility exercise yard.  (Dkt. No. 100 at 8-9; DUF #10.)  During the altercation, plaintiff was pepper sprayed in his facial area and

---

[1] Defendant Bartell, originally sued as Bartel, is still improperly identified in the court's CM-ECF system.  The clerk will be directed to correct the spelling of Bartell's name.

[2] "Undisputed Facts" designated herein are those actually undisputed by the parties as well as those deemed undisputed by the court upon review of the evidence submitted.

1  hit in the right shoulder by a 40 mm impact round fired by correctional officers.  (Dkt. No. 100 at

2  8-9; DUF #11, 12.)

3           2.       Discussion

4           The parties dispute whether Bartell and Moreland heard via intercom, or through

5  the control room's windows, Benjamin and Barrus make threatening statements to plaintiff on

6  July 31, 2007.  (DUF #7; Dkt. No. 199 at 2-3.)  Bartell and Moreland contend they did not hear

7  any such threats (DUF # 7), and argue that summary judgment is warranted because that the

8  record contains no admissible evidence that they were aware of facts from which the inference

9  could be drawn that a substantial risk of serious harm to plaintiff existed, or that they disregarded

10  any such risk.

11           As set forth, allegations in plaintiff's verified second amended complaint have the

12  effect of an affidavit to oppose summary judgment to the extent those allegations are based on

13  personal knowledge and set forth specific facts admissible in evidence.  Plaintiff alleges in his

14  verified second amended complaint that Benjamin stated very loudly, through the window to

15  plaintiff, "we[']re going to stick you tomorrow motherfucker," and that inmate Barrus stated

16  "we[']re going to get you tomorrow."  (Dkt. No. 100 at 7.)  Plaintiff further alleges that Moreland

17  then stated to plaintiff "Hey Jennings; do you want me to open the (A-section) door?"  (Id.)  To

18  this, plaintiff responded "Did you hear what those guys just said?"  (Id.)  Moreland replied "Yes,

19  I heard what was said, I have the intercom turned on, I always have it turned on."  (Id.)  Bartell

20  stood nearby during this exchange.  (Id.)  Later that day, Moreland stated to plaintiff, as Bartell

21  stood beside Moreland, "those guys are locked in their cells, maybe they will cool down by the

22  morning."  (Id. at 7-8.)

23           If believed, plaintiff's allegations adequately demonstrate that Moreland heard

24  Benjamin and Barrus threaten plaintiff.  However, there is no evidence in the record

25  demonstrating that Bartell heard those threats.  A prisoner may rely on circumstantial evidence to

26  demonstrate that officials knew of a risk to his safety.  See Farmer, 511 U.S. at 842; Wallis v.

7

1  Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (same).  Here, the extent of plaintiff's

2  circumstantial evidence with respect to Bartell's subjective knowledge is that Bartell stood in the

3  control booth, engaged in duties of observing inmates in the sometimes noisy dayroom, near

4  another correctional officer who, based on plaintiff's allegations, is reasonably inferred to have

5  heard Benjamin and Barrus threaten plaintiff.  This evidence is insufficient to demonstrate that

6  Bartell was aware of facts from which the inference could be drawn that a substantial risk of

7  serious harm existed to plaintiff's safety.  Accordingly, summary judgment should be entered for

8  Bartell on the failure to protect claim.  See Farmer, 511 U.S. at 837.

9          A question remains whether there is evidence that Moreland had a sufficiently

10  culpable state of mind in failing to take action to abate the risk.  See Id. at 832, 834; Whitley v.

11  Albers, 475 U.S. 312, 319 (1986) (holding that cruel and unusual punishment, under the Eighth

12  Amendment, requires more than "ordinary lack of due care for the prisoner's interests or safety").

13  The Ninth Circuit has explained:

14          The deliberate indifference standard requires a finding of some
        degree of individual culpability, but does not require an express
15          intent to punish.  The standard does not require that the guard or
        official 'believe to a moral certainty that one inmate intends to
16          attack another at a given place at a time certain before that officer
        is obligated to take steps to prevent such an assault.  But, on the
17          other hand, he must have more than a mere suspicion that an attack
        will occur.

18

19  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (internal quotations and citations omitted).

20  The requisite state of mind lies "somewhere between the poles of negligence at one end and

21  purpose or knowledge at the other."  Whitley, 475 U.S. at 836.  Acting or, as in this case, failing

22  to act, with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk

23  of serious harm to the inmate."  See Id.  Neither negligence nor gross negligence will constitute

24  deliberate indifference.  Farmer, 511 U.S. at 835-36 & n.4.  An official must both be aware of

25  facts from which the inference could be drawn that a substantial risk of harm exists, and they

26  must also draw the inference.  Id. at 837.

1          There is also the issue of causation: a person deprives another of a constitutional

2  right, within the meaning of section 1983, if he does an affirmative act, participates in another's

3  affirmative acts, or omits to perform an act which he is legally required to do that *causes* the

4  deprivation of which the plaintiff complains.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988)

5  (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  The causation inquiry "must be

6  individualized and focus on the duties and responsibilities of each individual defendant whose

7  acts or omissions are alleged to have caused a constitutional deprivation."  Leer, 844 F.2d at 633.

8  Further,

9          [W]hen, as in this case, a prisoner seeks to hold a prison employee
           individually liable because another prisoner attacked him, the
10         prisoner must establish individual fault.  Sweeping conclusory
           allegations will not suffice to prevent summary judgment.  The
11         prisoner must set forth specific facts as to each defendant's
           deliberate indifference.

12

13  Leer, 844 F.2d at 633-34 (internal citations omitted).

14         Moreland contends causation is lacking because plaintiff's injuries resulted from a

15  mutual combat in which plaintiff was an active participant.  (Dkt. No. 185-1 at 10.)  However,

16  the allegations in plaintiff's verified second amended complaint adequately dispute this material

17  fact for purposes of summary judgment.  (Dkt. No. 100 at 8-9.)

18         As to Moreland's state of mind, there is no evidence that plaintiff specifically

19  voiced concern to Moreland about his safety.  Rather, plaintiff only asked Moreland whether she

20  heard "what those guys just said," which Moreland acknowledged in the affirmative, and later

21  stated in addition "those guys are locked in their cells, maybe they will cool down by the

22  morning."  This evidence arguably fails to demonstrate that Moreland subjectively believed that a

23  substantial risk of harm existed to plaintiff.

24         However, given the evidence that Moreland overheard a specific threat of violence

25  to occur on a specific day- "tomorrow"- there is a genuine issue of material fact as to whether

26  Moreland "recklessly disregard[ed] a substantial risk of serious harm" to plaintiff (see Whitley,

9

1  475 U.S. at 836), and whether she was in a position to take steps to avert the incident (see 15 Cal.

2  Code Regs. § 3335 (a) ("When an inmate's presence in an institution's general inmate population

3  presents an immediate threat to the safety of the inmate or others... the inmate shall be

4  immediately removed from general population and placed in administrative segregation.")).

5         The issue is close, and a further airing of evidence may demonstrate that plaintiff

6  is not entitled to recovery from Moreland.  However, viewing the evidence in the light most

7  favorable to plaintiff, a triable issue exists as to Moreland's state of mind.  Whether she had

8  actual knowledge as to the imminence of a threat to plaintiff's safety, and whether she was

9  subjectively, deliberately indifferent, depends on whose account of the events is found credible.

10  This determination must be made by the factfinder.  Therefore, summary judgment is not

11  appropriate for Moreland on this claim.  See Nelson v. City of Davis, 571 F.3d 924, 929 (9th Cir.

12  2009) (credibility determinations must be left to the factfinder and not decided by a judge on a

13  motion for summary judgment).

14        C.    Defendants B. Brown, Valente, and Pereira

15        1.    Undisputed Facts

16         After the altercation between plaintiff and Barrus was quelled, defendant B.

17  Brown (correctional officer) escorted plaintiff to the decontamination shower in the A-facility

18  pedestrian sally port, and then on to be examined by defendant Valente (registered nurse).  (Dkt.

19  No. 100 at 9; DUF #13, 14.)  At 8:00 a.m., Valente examined plaintiff and noted no open wounds

20  or active bleeding.  (DUF # 15, 16.; Valente decl. At ¶2.)  Valente cleaned plaintiff's wounds

21  with some type of solution.  (Dkt. No. 100 at 9; DUF #17.)  Valente instructed B. Brown that

22  plaintiff was "clear" for Administrative Segregation ("Ad-Seg").  (Dkt. No. 100 at 9.)

23         Prior to plaintiff's transfer to Ad-Seg, defendant Pereira (correctional lieutenant)

24  spoke with plaintiff.  (Dkt. No. 100 at 9.)  Although plaintiff complained of extreme pain to

25  \\\\\

26  \\\\\

10

1    Pereira and stated that he needed to be seen by a medical doctor, plaintiff was admitted into Ad-

2    Seg without further medical attention.  (Dkt. No. 100 at 9.)[3]

3                    2.       Discussion

4                             i.       B. Brown

5            The parties dispute whether plaintiff stated to B. Brown that he was in extreme

6    pain and needed to see a doctor and whether defendant Brown "ignored" that request.  (Dkt. No.

7    100 at 9; Brown decl. at ¶3.)  The disputed facts are immaterial.  Given that B. Brown delivered

8    plaintiff, within approximately seven minutes, to a licensed medical provider who treated

9    plaintiff and "cleared" him for Ad-Seg, it cannot be said that B. Brown "denied, delayed, or

10   intentionally interfered with plaintiff's medical treatment" in violation of the Eighth Amendment.

11   See Hallett, 296 F.3d at 744; see also, e.g., Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004)

12   ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are

13   mistreating (or not treating) a prisoner, a non-medical prison official... will not be chargeable

14   with the Eighth Amendment scienter requirement of deliberate indifference."); c.f. Ledoux v.

15   Davies, 961 F.2d 1536, 1537 (10th Cir. 1992) (holding that acts by non-medical prison officials

16   that prevent access to treatment recommended or prescribed by medical personnel may constitute

17   deliberate indifference).  Summary judgment in B. Brown's favor is warranted.

18                            ii.       Valente

19           The parties dispute whether Valente offered plaintiff a mild pain relief medication

20   during Valente's examination of plaintiff following the altercation and whether Valente re-

21   examined plaintiff three times at 15 minute intervals following the initial examination until

22   transfer into Ad-Seg.  (Dkt. No. 100 at 9; DUF #17, 18.)  The disputed facts are immaterial.  At

23   most, plaintiff provides evidence of a difference in opinion regarding medical treatment, which

24

25           [3] It appears that Pereira's signed declaration, while referenced in defendants' undisputed
     facts, was inadvertently not submitted to the court. Accordingly, the undersigned does not rely on
26   any facts asserted to be undisputed by defendants which cite Pereira's missing affidavit.

                                                    11

does not give rise to an Eighth Amendment deliberate indifference claim.  Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (holding that to prevail where a defendant has based his actions on medical judgment, a plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health)).  Summary judgment should be granted for Valente.

### iii.   Pereira

Like B. Brown, Pereira cannot be held liable for deliberate indifference where plaintiff had just been treated by a licensed medical provider and "cleared" for admission to Ad-Seg in the absence of any evidence that Pereira knew or should have known that plaintiff had not received adequate care.  Plaintiff's statement that he was in extreme pain and needed to see a medical doctor, in the face of Valente's contrary assessment, is insufficient.  See Hallett, 296 F.3d at 744; Spruill, 372 F.3d at 236.  Summary judgment in Pereira's favor is warranted.

### D.   Defendant Vance

#### 1.   Undisputed Facts

On August 2, 2007, plaintiff met with defendant Vance (correctional captain), in Vance's capacity as A-Facility Captain for an Ad-Seg review hearing.  (DUF #23; Dkt. No. 100 at 10.)  Plaintiff told Vance he was in pain and needed to see a medical doctor.  (DUF #25; Dkt. No. 100 at 10.)  Vance did not observe any objective signs that plaintiff was in acute medical distress.  (DUF #26.)  Vance informed plaintiff's custody officers of plaintiff's complaints of shoulder pain and recommended that they inform the Ad-Seg medical staff.  (DUF #24.)

#### 2.   Discussion

Plaintiff alleges in his verified second amended complaint that he was returned to his cell without receiving any medical assistance at that time.  (Dkt. No. 100 at 10.)  He argues in his opposition that no written report obtained through discovery demonstrates that Vance made a referral in regard to plaintiff's complaints of pain.  (Dkt. No. 199 at 11.)  The absence of a

1   written report does not contradict Vance's sworn declaration that he did so.  As a Facility

2   Captain, Vance could reasonably expect that the subordinate correctional employees would carry

3   out his orders.  Whether they actually did so or not is irrelevant to the Eighth Amendment

4   deliberate indifference inquiry into Vance's subjective state of mind.  <u>Farmer</u>, 511 U.S. at 834.

5   There is no evidence that Vance was deliberately indifferent to plaintiff's serious medical needs

6   and summary judgment is therefore appropriate for Vance on this claim.

7           Plaintiff additionally clarifies in his opposition that Vance is being sued for an

8   Eighth Amendment failure to protect claim.  (Dkt. No. 199 at 10.)  Defendants' counsel

9   acknowledges that the dispositive motion filed neglected to request summary judgment on

10  plaintiff's failure to protect claim against Vance.  (Dkt. No. 204 at 1.)  This matter will be

11  addressed <i>infra</i>.

12          E.      <u>Defendants Mansaray and Flores</u>

13                  1.      <u>Undisputed Facts</u>

14          On August 2, 2007 and August 4, 2007, defendant Mansaray (psychiatric

15  technician) was assigned the task of attending to the mental health-related treatment of several

16  Ad-Seg inmates, including plaintiff, by dispensing prescribed medications to them in their cells.

17  (DUF #21.)  On both days, plaintiff gave Mansaray a Medical Request form and asked that it be

18  forwarded to the appropriate medical staff person.  (DUF #22.)  Mansaray complied with

19  plaintiff's requests.  (DUF #22.)  As a psych-tech, Mansaray is authorized to dispense

20  medications, but cannot prescribe them.  (Mansaray decl. at ¶4.)

21          On August 11, 2007, defendant Flores (psychiatric technician) was assigned to

22  work the Second Watch shift in CSP-SAC's Enhanced Out-Patient ("EOP") unit.  (DUF #52.)

23                  2.      <u>Discussion</u>

24          Plaintiff has alleged in his second amended complaint that he showed Flores his

25  shoulder on August 11, 2007 and explained that he was in terrible pain and that he needed

26  medical attention (Dkt. No. 100 at 14.)  In contrast, Flores has no recollection of the above and

1   states that Flores would have contacted the on-duty nurse had Flores perceived that plaintiff was

2   in acute pain, physical distress, or otherwise in a medical emergency.  (Dkt. No. 185-6 (Flores

3   decl. at ¶4.))

4           As to Mansaray, plaintiff complains in his opposition that Mansaray refused to tell

5   plaintiff his real name and also that Mansaray dispensed plaintiff only non-pain medication,

6   despite the fact that plaintiff personally gave Mansaray medical request forms indicating that his

7   wound was swollen and bleeding and that he was in severe pain.  (Dkt. No. 199 at 8-10.)

8   Statements in a brief cannot be used to create an issue of fact; regardless, even if properly in

9   evidence these allegations would not prevent summary judgment.

10          The disputed facts as to plaintiff's claims against Flores and Mansaray are

11  immaterial.  There is no evidence that either psychiatric technician prevented plaintiff from

12  accessing appropriate medical treatment in violation of the Eighth Amendment.  Plaintiff has

13  failed to put forth evidence demonstrating that either Flores or Mansaray were aware of facts

14  from which the inference could be drawn that a substantial risk of serious harm exists, and that

15  they drew the inference.  Farmer, 511 U.S. at 834.  Moreover, reliance by both on CSP-SAC

16  medical staff to attend to plaintiff's needs was reasonable and does not constitute deliberate

17  indifference.  See Hallett, 296 F.3d at 744; Spruill, 372 F.3d at 236.  Summary judgment should

18  be entered for Flores and Mansaray.

19          F.      Defendant Steward[4]

20          There are no material undisputed facts as to defendant Steward (correctional

21  officer); the parties simply dispute whether Steward ever came into contact with plaintiff, and, if

22  so, whether plaintiff gave Steward a medical request form on August 5, 2007.  (DUF #26; Dkt.

23  No. 100 at 10-11.)  Viewing the evidence in the light most favorable to plaintiff, there is no

24  indication that Steward was, subjectively, deliberately indifferent to plaintiff's serious medical

25

26          [4] Defendant Steward, originally sued as Stewart, is still improperly identified in the
    court's CM-ECF system.  The clerk will be directed to correct the spelling of Steward's name.

1    needs.  Summary judgment is appropriate.

2         G.    Defendant Goldman

3              1.    Undisputed Facts

4              On August 7, 2007, defendant Goldman (correctional lieutenant) conducted a "use

5    of force" interview of plaintiff.  (DUF #27; Dkt. No. 100 at 11.)  During the interview, Goldman

6    asked plaintiff to describe the events that led to his shoulder injury, and another correctional

7    employee in the room took a video recording to document the existence of any visible injuries on

8    plaintiff's shoulder.  (DUF #28; Dkt. No. 100 at 11-12.)  During the interview, plaintiff's

9    shoulder did not exhibit any open wounds, nor did plaintiff display any signs of medical distress

10   that required an emergency medical response.  (DUF #30.)

11             2.    Discussion

12             The parties dispute whether Goldman directed plaintiff's custody escort officers to

13   immediately take plaintiff to a medical facility following this interview to be evaluated for his

14   complaints of shoulder pain, or whether Goldman told plaintiff he was refusing plaintiff's request

15   to see a doctor.  (DUF #31; Dkt. No. 100 at 12.)

16             Plaintiff also argues in his opposition that Goldman's sworn declaration is

17   contradictory to information provided in response to plaintiff's discovery requests, particularly as

18   to Goldman's recollection or non-recollection of taking a video recording of plaintiff.  (Dkt. No.

19   13.)  However, plaintiff has failed to place any of Goldman's discovery responses in evidence for

20   purposes of the pending motion for summary judgment.

21             Viewing the evidence in the light most favorable to plaintiff, there is no indication

22   that Goldman was deliberately indifferent to plaintiff's serious medical needs.  There is no

23   evidence that Goldman was made aware of facts from which the inference could be drawn that a

24   substantial risk of serious harm existed, or that he actually drew such an inference.  Farmer, 511

25   U.S. at 834.  Summary judgment should be entered for defendant Goldman.

26   ////

1       H.    <u>Defendant Craddock</u>

2           1.    <u>Undisputed Facts</u>

3             On August 8, 2007, plaintiff was examined by defendant Craddock (registered

4 nurse). (DUF #32; Dkt. No. 100 at 12.) During the examination, Craddock noted: (1) plaintiff's

5 complaint that he had been "beaten up" during a fight in the EOP recreation yard on August 1,

6 2007, and (2) plaintiff's complaints of "sharp and achy" pain in his right upper arm and shoulder

7 caused by being hit by a 40 mm impact round fired by a correctional officer. (DUF #33.)

8 Craddock memorialized plaintiff's then-current prescriptions for various medications. (DUF

9 #34.) Craddock's objective observations during the examination were that plaintiff's circulation,

10 sensation, and range of movement were good, and that he did not have any open wounds in his

11 right arm or shoulder. (DUF #35; Dkt. No. 185-7 (Craddock decl.) at ¶4.) Following the

12 examination, Craddock released plaintiff to return his cell. (DUF #37.)

13           2.    <u>Discussion</u>

14             The parties dispute whether, upon hearing plaintiff's complaints of pain and

15 request to see a medical doctor, Craddock made an urgent referral to a physician for a follow-up

16 examination (DUF #36), or whether she stated that plaintiff would not be seeing the medical

17 doctor until August 13, 2007. (Dkt. No. 100 at 12.) It is also disputed whether Craddock offered

18 plaintiff Motrin for pain or whether she told him he would not be receiving pain medication.

19 (DUF #34; Dkt No. 100 at 12.) Plaintiff alleges in his second amended complaint that Craddock

20 denied his request for x-rays. (Dkt. No. 100 at 12.)

21             Under either version of the facts as submitted by the parties, plaintiff's

22 disagreement with the treatment regimen provided by Craddock did not constitute deliberate

23 indifference to serious medical needs in light of the undisputed facts regarding Craddock's

24 observation of plaintiff's physical condition at the time she examined him. <u>See</u> <u>Toguchi</u>, 391

25 F.3d at 1059-60.

26 /////

I.      Defendant Scicluna[5]

      1.      Undisputed Facts

On August 8, 2007, plaintiff complained to defendant Scicluna (correctional officer), about shoulder pain.  (DUF # 38; Dkt. No. 100 at 12-13.)  Scicluna did not observe any objective signs that plaintiff required immediate emergency medical attention at that time.  (DUF #40.)  Nevertheless, in response to plaintiff's complaints, Scicluna called medical staff to inform them of plaintiff's complaints.  (DUF #39.)

      2.      Discussion

The allegations in plaintiff's verified second amended complaint about his August 8, 2007 encounter with Scicluna are inconsistent with the above evidence, as plaintiff alleges that Scicluna "just walked away without helping."  (Dkt. No. 100 at 13.)  Plaintiff does not, however, have personal knowledge of Scicluna's actions taken outside of plaintiff's presence and therefore cannot rely on the allegations in his complaint to refute the evidence submitted by Scicluna.  Plaintiff also argues in his opposition that no discovery was ever turned over by Scicluna regarding the call to the nurse's station; plaintiff does not elaborate further.  (Dkt. No. 199 at 17.)  Scicluna's interrogatory responses are in evidence and have been reviewed; there is no interrogatory to which the evidence at issue would have been responsive.  (See Dkt. No. 199 at 90-96.)  Accordingly, plaintiff fails to place the material facts at issue in dispute and summary judgment is appropriate in Scicluna's favor.  See Hallett, 296 F.3d at 744; Spruill, 372 F.3d at 236.

J.      Defendant Walker

      1.      Undisputed Facts

On August 9, 2007, defendant Walker (warden) presided over a hearing for plaintiff's initial Ad-Seg Review.  (DUF #41; Dkt. No. 100 at 13.)  Plaintiff described his health

---

[5] Defendant Scicluna, originally sued as Secluna, is still improperly identified in the court's CM-ECF system.  The clerk will be directed to correct the spelling of Scicluna's name.

1    as fair.  (DUF #42.)  At the conclusion of the hearing, plaintiff was released from Ad-Seg and

2    returned to general population.  (DUF #43; Dkt. No. 100 at 13.)  On October 24, 2007, Walker

3    denied plaintiff's appeal grieving the August 1, 2007 incident at the second level of review.

4    (DUF #44.)  Other than as just described, Walker had no interactions with plaintiff regarding the

5    issues raised in this lawsuit.  (DUF #46.)

6                    2.    Discussion

7                    Plaintiff puts forth no evidence demonstrating that Walker was made aware of

8    facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff's

9    health existed, or that Walker actually drew such an inference.  Farmer, 511 U.S. at 834.

10   Summary judgment should be entered for Walker on the deliberate indifference claim.

11        K.    Defendant W. Brown

12                    It does not appear that there are any material undisputed facts relative to the

13   Eighth Amendment claim against defendant W. Brown.  Rather, the parties dispute the events

14   August 11, 2007.  Plaintiff alleges in his verified second amended complaint that he showed W.

15   Brown his injured shoulder and that W. Brown "exclaimed" at it, yet walked away without

16   assisting him.  (Dkt. No. 100 at 14-15.)  Defendant Brown disputes this evidence stating that if

17   plaintiff had appeared to need medical attention or complained of excruciating shoulder pain, W.

18   Brown would have contacted the on-duty registered nurse or another medical staff member to

19   report the complaints.  (Dkt. No. 185-6 (Brown decl. at ¶4.)

20                    W. Brown is a non-medical prison official.  Under either version of the facts,

21   plaintiff fails to put forth evidence demonstrating that W. Brown was made aware of facts from

22   which the inference could be drawn that a substantial risk of serious harm to plaintiff's health

23   existed, and that W. Brown actually drew that inference.  See Farmer, 511 U.S. at 834; see also

24   Spruill, 372 F.3d at 236 ("[A]bsent a reason to believe (or actual knowledge) that prison doctors

25   or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official... will

26   not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

1   Summary judgment should be entered for W. Brown.

2        L.    Defendant Bal

3            1.    Undisputed Facts

4            Defendant Bal was the Chief Medical Officer.  (DUF #1.)  At all times relevant to

5   plaintiff's allegations in this matter, the primary responsibility for reviewing the day-to-day

6   actions of CSP-Sac's health care practitioners rested not with Bal, but rather, with each

7   practitioner's direct supervisory staff member.  (DUF #57.)  Bal had no knowledge of plaintiff's

8   complaints regarding the alleged mistreatment by medical staff defendants Valente, Craddock,

9   Mansaray, or Flores.  (DUF #58.)

10           2.    Discussion

11           Plaintiff's deliberate indifference claim against defendant Bal is unsupported by

12  any factual allegations that could support a finding that he was individually liable under section

13  1983.  Supervisory personnel are generally not liable under section 1983 for the actions of their

14  employees under a theory of respondeat superior and, therefore, when a named defendant holds a

15  supervisorial position, the causal link between him and the claimed constitutional violation must

16  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

17  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and

18  conclusory allegations concerning involvement of official personnel in civil rights actions are not

19  sufficient.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Summary judgment

20  should be granted as to defendant Bal.

21  II.    Remaining Claims against Vance, Walker and Moreland

22           In reply to plaintiff's opposition to defendants' motion for summary judgment,

23  defendants' counsel states that, for reasons undetermined, the dispositive motion filed neglected

24  to request summary judgment on plaintiff's failure to protect claim against Vance, as discussed

25  supra, and in addition, on plaintiff's failure to protect claim against Walker and deliberate

26  indifference claim against Moreland.  (See Dkt. No. 204 at 1.)

1    Sua sponte, and in the interests of justice, the court will grant defendants Vance,

2  Walker and Moreland an extension of time to file a dispositive motion addressing these claims.

3    In accordance with the above, IT IS HEREBY ORDERED that:

4    1.    The clerk is directed to correct the spelling of Bartell, Steward and

5        Scicluna in the court's CM-ECF system.

6    2.    Defendants Vance, Walker and Moreland are granted 30 days from the

7        date of this order in which to file a dispositive motion as to the three

8        claims not addressed in the dispositive motion already filed.  Defendants

9        are cautioned that extensions of time will not be granted absent good cause

10        shown and extraordinary circumstances.

11    Further, IT IS HEREBY RECOMMENDED that:

12    1.    Defendants' motion for summary judgment (Dkt. No. 185) be GRANTED

13        IN PART and DENIED IN PART, as follows: (1) granted as to the

14        Eighth Amendment failure to protect claim against Bartell; (2) granted as

15        to the Eighth Amendment medical deliberate indifference claims against

16        Valente, Craddock, Scicluna, Vance, Goldman, Pereira, Steward, B.

17        Brown, Walker, Flores, Bal, W. Brown and Mansary; and (3) denied as to

18        Eighth Amendment failure to protect claim against Moreland.

19    These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within fourteen days after service of the objections.  The parties are

25  ////

26  ////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

  Dated: February 6, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
jenn1305.msj

21