1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW G. JENNINGS,                        No.  2:08-cv-01305 LKK CKD P

12               Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   A. MORELAND, et al.,

15               Defendants.

16

17

18          Plaintiff is a state prisoner proceeding pro se.  Plaintiff sues various officials supervising

19   his detention for damages in this civil rights action under 42 U.S.C. § 1983.  This action proceeds

20   on plaintiff's second amended complaint against fifteen named defendants.  (Amended Compl. &

21   Demand for Jury Trial ("SAC"), ECF No. 100.)  Plaintiff claims that defendants violated his civil

22   rights under the Eight Amendment at California State Prison-Sacramento ("CSP-Sacramento") by

23   (1) failing to protect him from another inmate's assault in deliberate indifference to the

24   substantial risk of serious injury, or (2) failing to provide adequate medical care for injuries

25   arising from the assault in deliberate indifference to his serious medical needs.

26          In a prior order and findings and recommendations (ECF No. 209), this court found an

27   absence of genuine dispute of material fact on several of plaintiff's claims and recommended that

28

                                                    1

1    defendants' prior motion for summary judgment (ECF No. 185) be granted in part and denied in

2    part.  Specifically, this court recommended defendants' summary judgment motion be granted on

3    plaintiff's failure-to-protect claim against defendant Bartell, and on plaintiff's medical-deliberate-

4    indifference claims against all applicable defendants—with the exception of defendants Vance

5    and Walker.  Moreover, the undersigned recommended summary judgment be denied on

6    plaintiff's failure-to-protect claim against defendant Moreland, finding a genuine dispute of

7    material fact.  (ECF No. 209, at 20:12-18, .)

8         Further, the court noted that—as defendants pointed out in their reply—defendants

9    inadvertently neglected to request summary judgment on three claims in their motion for

10   summary judgment.  Defendants neglected to request summary judgment on plaintiff's failure-to-

11   protect claims against Vance and Walker and on plaintiff's medical-deliberate-indifference claim

12   against Moreland.  Accordingly, "in the interests of justice," the court granted defendants Vance,

13   Walker, and Moreland "30 days from the date of this order [February 6, 2013] to file a dispositive

14   motion as to the three claims not addressed in the motion already filed."  (Id. at 20:6-10.)

15        Defendants Vance, Walker, and Moreland filed a supplemental motion for summary

16   judgment on these three claims within the time prescribed, and this motion is fully briefed and

17   now before this court.  (ECF No. 214.)  Thus, the issues to be decided here are those raised in

18   defendants' supplemental motion: whether summary judgment should be granted on the claims

19   asserted against defendants Vance, Walker, and Moreland, which are decided below.

20   I.   Plaintiff's Rule 46 Objection

21        As an initial matter, plaintiff objects under Federal Rule of Civil Procedure 46[1] "to the

22   Magistrate's previous ruling allowing the defendant[s] to re-litigate their very own submitted

23   summary judgment motion."  (Pl.'s Resp. to Def.'s Moreland Vance, & Walker's Req. for Summ.

24   J. ("Opp'n") 1:16-19, ECF No. 217.)  Plaintiff appears to be referring to this court's prior order,

---

26   [1] Federal Rule of Civil Procedure 46, "Objecting to a Ruling or Order," provides: "A formal
27   exception to a ruling or order is unnecessary.  When the ruling or order is requested or made, a
     party need only state the action that it wants the court to take or objects to, along with the grounds
     for the request or objection.  Failing to object does not prejudice a party who had no opportunity
28   to do so when the ruling or order was made."

granting "defendants Vance, Walker[,] and Moreland an extension of time to file a dispositive

motion addressing [remaining] claims," which defendants neglected to address in their motion for

summary judgment, "in the interests of justice."  (ECF No. 209, at 20:1-10.)

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

as to the facts before the court."  Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468,

1471 (9th Cir. 1994).  Moreover, "[a] schedule may be modified . . . for good cause and with the

judge's consent."  Fed. R. Civ. P. 16(b)(4).  In a prior ruling, this court found defendants'

inadvertent neglect to request summary judgment on three claims constituted good cause to

modify the scheduling order, and granted defendants 30 days to address these claims.  (ECF No.

209.)  Because the undersigned finds no reason to revisit this prior ruling at this time, plaintiff's

objection is OVERRULED.

II.  Legal Standards

    A.  Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there "is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion

by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R.

Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

1   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

2   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3   of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

4   and/or admissible discovery material, in support of its contention that the dispute exists or show

5   that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

6   R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

7   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

8   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

9   Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

10  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

11  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

12          In the endeavor to establish the existence of a factual dispute, the opposing party need not

13  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

16  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

18  amendments).

19          In resolving the summary judgment motion, the evidence of the opposing party is to be

20  believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

21  facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

22  U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

23  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

24  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th

25  Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

26  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

27  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

28  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

4

1    The court "is not required to comb through the record to find some reason to deny a

2    motion for summary judgment." Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th

3    Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's attention to

4    specific triable facts." S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).

5    Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  Barnes

6    v. Indep. Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

7    On March 18, 2009 (ECF No. 21), on July 12, 2012 (ECF No. 187), and again on March

8    12, 2013 (ECF No. 215), pursuant to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d

9    934 (9th Cir. 2012), the court advised plaintiff of the requirements for opposing a motion

10   pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d

11   952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

12   Plaintiff's second amended complaint is verified under penalty of perjury.  It therefore has

13   the effect of an affidavit to oppose summary judgment "to the extent it is 'based on personal

14   knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083,

15   1090 n.1 (9th Cir. 1996).  However, unsworn declarations and letters not signed under penalty of

16   perjury do not constitute admissible evidence properly considered in ruling on a motion for

17   summary judgment.  See 28 U.S.C. § 1746 (unsworn declarations must state that the matters

18   asserted therein are true under penalty of perjury).

19      B.  Applicable Eighth Amendment Standards

20   The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend.

21   VIII.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

22   inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).  Thus,

23   "prison officials have a duty to protect prisoners from violence at the hands of other prisoners,"

24   id. at 833 (internal alterations and quotation marks omitted), and the "failure of prison officials to

25   protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment

26   violation when . . . the prison officials . . . act[] with deliberate indifference." Hearns v. Terhune,

27   413 F.3d 1036, 1040 (9th Cir. 2005).  Further, "[a] prison official violates the Eight Amendment

28   when he acts with 'deliberate indifference' to the serious medical needs of an inmate." Snow v.

5

1   McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

2       To defeat a motion for summary judgment on a deliberate indifference claim, a prisoner

3   plaintiff "must show a genuine issue of material fact as to both prongs of the deliberate

4   indifference test: (1) whether [plaintiff] was confined under conditions posing a 'substantial risk

5   of serious harm' and (2) whether the officers were deliberately indifferent to that risk." Clouthier

6   v. Cnty. of Contra Costa, 591 F.3d 1232, 1244 (9th Cir. 2010).  The second prong of the

7   deliberate indifference test includes objective and subjective components: "[T]he deprivation

8   alleged must objectively be sufficiently serious; and the prison official must subjectively have a

9   sufficiently culpable state of mind." Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1049 (9th

10  Cir. 2002) (emphasis added).  The subjective component of "[d]eliberate indifference entails

11  something more than mere negligence[,] but is satisfied by something less than acts or omissions

12  for the very purpose of causing harm or with knowledge that harm will result." Hearns, 413 F.3d

13  at 1040 (internal alterations and quotation marks omitted) (quoting Farmer, 511 U.S. at 934).

14      C.  Qualified Immunity

15      "Qualified immunity gives government officials breathing room to make reasonable but

16  mistaken judgments . . . .  When properly applied, it protects 'all but the plainly incompetent or

17  those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011)

18  (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  In deciding whether a government official

19  is entitled to qualified immunity, the Supreme Court has articulated a two-prong approach: first,

20  whether the officer's conduct violated a constitutional right; and second, whether the officer's

21  conduct violated "clearly established law." Pearson v. Callahan, 555 U.S. 223, 232, 243-44

22  (2009) ("The principles of qualified immunity shield an officer from personal liability when an

23  officer reasonably believes that his or her conduct complies with the law.").  "[J]udges of the

24  district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two

25  prongs of the qualified immunity analysis should be addressed first." Id. at 236.

26      In the Eighth Amendment deliberate indifference context, the Ninth Circuit has clarified

27  that "the qualified immunity inquiry is separate from the constitutional inquiry." Estate of Ford,

28  301 F.3d at 1049.  To survive a motion for summary judgment asserting qualified immunity on a

1    "deliberate indifference claim," a prisoner plaintiff must present sufficient evidence that "a

2    reasonable officer" in defendants' position "would necessarily have perceived . . . an excessive

3    risk of serious harm."  Id. at 1051 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001)).  "[A]

4    reasonable prison official understanding that he cannot recklessly disregard a substantial risk of

5    serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the

6    exposure in any given situation was not that high," in which case, "he would be entitled to

7    qualified immunity."  Id. at 1050.

8    III. Factual Background

9          As discussed in detail in a prior order and findings and recommendations (ECF No. 209),

10   plaintiff's case arises from a physical altercation in the exercise yard of CSP-Sacramento.

11   Plaintiff contends that the day before the altercation in the yard, he was cleaning in the hallway of

12   CSP-Sacramento's A-Facility when inmate Benjamin threatened him with physical assault;

13   inmate Barrus was nearby.  The next day, plaintiff and inmate Barrus were involved in an

14   altercation, which plaintiff contends, was the result of inmate Barrus following through on inmate

15   Benjamin's threat from the day before.  In an effort to quell the altercation, correctional officers

16   pepper-sprayed plaintiff and shot him in the right shoulder with a 40 mm impact round.

17         Plaintiff, a "special needs yard" (SNY) "enhanced outpatient" (EOP) inmate, contends

18   defendants Walker and Vance are responsible for his being housed in A-Facility along with

19   general population EOP inmates in deliberate indifference to the substantial risk of serious injury.

20   Moreover, plaintiff contends defendant Moreland was deliberately indifferent to plaintiff's need

21   for medical care for a shoulder injury arising from the altercation on the exercise yard.

22   Accordingly, the facts listed below concern defendants Vance and Walker's involvement in the

23   decision to house plaintiff in A-Facility, and defendant Moreland's interaction with plaintiff.

24      A.  Undisputed Facts

25         1.  Plaintiff's housing

26         In May 2005, plaintiff was transferred to CSP-Sacramento from Salinas Valley State

27   Prison.  At plaintiff's Initial Classification Committee hearing, the Committee—which included

28   defendant Vance among other committee members—recommended that plaintiff be accepted into

1   CSP-Sacramento's Enhanced Outpatient Program and that he be housed in A-Facility.  (Opp'n,

2   Ex. E.)  The Enhanced Outpatient Program is for inmates who require mental health treatment

3   services.  Nearly all EOP inmates received medication at least once a day.

4          At the time of plaintiff's transfer, he was classified as a Level IV inmate.  California

5   Department of Corrections and Rehabilitation (CDCR) prisons are designed to house different

6   varieties of inmates from Level I–Level IV; the higher the level, the higher the risk the inmate

7   poses.  Thus, Level IV inmates require the most security.

8          Moreover, plaintiff was designated "special needs yard" (SNY).  Special needs yard

9   inmates "need to be housed separately from general population" (GP) inmates for safety reasons.

10  (Opp'n, Ex. O, at 12:20-28.)  It is uncommon to house SNY inmates with GP inmates in the same

11  facility.  (Id.)

12         Thus, plaintiff required three layers of specialized housing requirements: Level IV, SNY,

13  and EOP.  "Mule Creek State Prison was one of the only institutions within the California

14  Department of Corrections and Rehabilitation (CDCR)" that met all three of plaintiff's needs at

15  the time of plaintiff's transfer, because it was one of the few prisons "officially designated as a

16  Sensitive Needs Yard (SNY) EOP prison for Level IV inmates."  (Statement of Undisputed Facts

17  ("SUF") ¶ 7, ECF No. 214-2.)  However, "the number of SNY EOP inmates within the CDCR

18  system was far greater than Mule Creek State Prison's operating capacity" at the time of

19  plaintiff's transfer, (id. ¶ 8), so "CDCR allowed inmates to waive their SNY status in order to

20  become eligible for housing in (GP) EOP facilities" at Level IV institutions, such as CSP-

21  Sacramento.  (Id.)

22         EOP inmates at CSP-Sacramento have historically been housed in A-Facility.  Even

23  though SNY inmates are not usually housed together with GP inmates, prison officials at CSP-

24  Sacramento housed GP EOP inmates in A-Facility together with SNY inmates, like plaintiff.

25  However, "the only GP EOP inmates who were allowed to be housed in A-Facility were those

26  that prison officials deemed capable of programming safely and effectively, and without

27  disruption to the overall programming needs of the EOP inmates in A-Facility."  (SUF ¶ 12.)

28  /////

8

2. Plaintiff's medical care

After the altercation between inmate Barrus and plaintiff was contained, plaintiff was handcuffed and taken to the nurse. Various medical personnel attended to plaintiff and noted that he had sustained bruises and abrasions to his right shoulder, right elbow, and both knees. About a week later, a nurse visited plaintiff and determined that plaintiff's "circulation, sensation, and range of motion were all good." (SUF ¶ 27.) The nurse ensured that plaintiff had adequate pain-relief medication, and referred plaintiff to see a physician for a follow-up examination.

B. Disputed Facts

Concerning plaintiff's housing status, defendants contend "inmates that waived their SNY status and agreed to house on the GP were typically housed in A-Facility EOP if they were deemed compatible." (SUF ¶ 9.) Plaintiff disputes this fact and argues that defendants coerced him into waiving his SNY status. Specifically, plaintiff points to evidence in the record (a committee report) which shows that plaintiff was placed indefinitely in the security housing unit (SHU) because he refused to waive "his SNY concerns to be housed in a general population EOP and [Mule Creek State Prison] MCSP is the only EOP SNY Level-IV and III institution." (Opp'n, Ex. F.) Plaintiff states in his opposition that defendant Vance told plaintiff: "if he, (the Plaintiff) did not waive his (SNY) concerns and be placed on C.S.P.-Sacramento General Population A-facility, the Plaintiff would remain in administrative segregation for a[n] indeterminate amount of time." (Opp'n 3:24-4:2 (emphasis omitted).) Thus, plaintiff avers "defendant[s] Walker and Vance . . . forced (SNY) inmates to waive their (SNY) status . . . based upon threats of placement in (AD/SEG) with minimal privile[ges], minimal personal property until the inmate 'broke' and waived their (SNY) status [which constitutes] a[n] 8th amendment violation." (Id. at 4:2-6 (emphasis omitted).) In light of plaintiff's proffered evidence, this court resolves this factual dispute in favor of the plaintiff for purposes of deciding this summary judgment motion. See McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009) ("[W]e view the evidence in the light most favorable to [the plaintiff]. All justifiable inferences are to be drawn in his favor and his evidence is to be believed.").

/////

9

1    Further, defendants contend: "Inmate transfers are coordinated by the CDCR's Division of

2    Adult Institutions; they are not handled at the institutional level." (SUF ¶ 13.) Plaintiff disputes

3    this fact, averring: "The overall determination of whether to place a (SNY) inmate on the General

4    Population A-facility once the inmate arrives at C.S.P.-Sacramento rest[s] solely on C.S.P.-

5    Sacramento's classification committee which in this instant case was defendant[s] Walker and

6    Vance." (Opp'n 4:24-5:4 (emphasis omitted.) Plaintiff cites Exhibits E–H attached to his

7    opposition, which show that Walker and Vance participated on committees—along with many

8    other committee members—that classified plaintiff and eventually decided to house plaintiff in

9    A-facility. However, plaintiff does not offer evidence that contradicts defendants' evidence that

10   shows inmate transfers, from one institution, such as from CSP-Sacramento to Mule Creek, are

11   made by CDCR at the department level, not by the prisons at the institutional level. Therefore,

12   the court finds that this fact is undisputed for purposes of summary judgment. See S. Cal. Gas

13   Co., 336 F.3d at 889  ("[T]he party opposing summary judgment must direct the Court's attention

14   to specific triable facts.").

15   Finally, regarding plaintiff's medical-indifference claim against defendant Moreland,

16   defendants contend: "Moreland does not recall that Plaintiff requested medical attention at any

17   time on August 12, 2007, nor does she recall that Plaintiff ever showed her, or tried to show her,

18   his shoulder injury." (SUF ¶ 29.) Plaintiff, on the other hand, contends: "The Plaintiff informed

19   Moreland of his serious medical needs, [and] requested medical assistance." (Opp'n 6:27-7:3.)

20   IV. Analysis

21       A. Failure-to-Protect Claims Against Vance and Walker

22   Defendants move for summary judgment on plaintiff's failure-to-protect claims asserted

23   against Vance and Walker. Plaintiff alleges defendants Walker and Vance violated his Eighth

24   Amendment rights "by placing Plaintiff who is 'Protected Custody' among other inmates who

25   were not protected custody," and "[a]s a result[,] Plaintiff was attacked by a[nother] inmate . . . ."

26   (SAC 18:2-10.) Defendants argue summary judgment is appropriate here because, inter alia,

27   "Defendants Vance and Walker had no reason to know that Plaintiff's appropriate placement as

28   an SNY EOP inmate in CSP-Sacramento's A-Facility posed any unconstitutional risk of harm to

1    his safety," and had no knowledge "of a specific threat from inmates Benjamin and Barrus to

2    have protected against."  (Mem. P. &. A. in Supp. of Supp. Mot. Summ. J. ("Mot. Summ. J.")

3    14:3-7, ECF No. 214-1.)  Moreover, defendants argue Vance and Walker are entitled to qualified

4    immunity because "no reasonable official in their position would have believed that the housing

5    situation was a violation of any constitutional right."  (Id. at 15:4-6.)  Plaintiff opposes, arguing

6    Vance and Walker's respective discovery responses evince that they knew "sensitive needs

7    inmates and general population inmates need to be housed separately," and a "Resolution of

8    Enemy Concerns" report evinces they "had prior knowledge that a potential enemy situation

9    existed" with inmate Barrus, who was housed with plaintiff in A-Facility.  (Opp'n 16:23-17:15.)

10          Review of the record in this case reveals that there is no evidence that defendants Vance

11   and Walker knew of any specific threat from inmates Benjamin and Barrus.  Plaintiff points to a

12   "Resolution of Enemy Concerns" report, (Opp'n Ex. I, at 55), which plaintiff contends evinces

13   that Vance and Walker had prior knowledge of a potential enemy situation between plaintiff and

14   Barrus.  However, the report in question states: "[Plaintiff] and Barrus both acknowledge that a

15   potential enemy situation existed; however, both stated that they do not consider the other as an

16   enemy and feel comfortable programming in the same population together."  (Id. (emphasis

17   added).)  Moreover, there is no evidence that Vance or Walker knew of the report, which was

18   signed by Correctional Sergeant Rendon (as well as plaintiff and Barrus).  Therefore, the issue is

19   whether Vance and Walker's decision[2] to house plaintiff, a special-needs-yard EOP inmate, in A-

20   Facility with those general-population EOP inmates "that prison officials deemed capable of

21   programming safely and effectively" (SUF ¶ 12) was unconstitutionally deliberately indifferent.

22          A prison official's housing decision does not violate the Eighth Amendment merely

23   because it increases the risk of harm to a prisoner; the decision is unconstitutionally deliberately

24   indifferent only if  "the risk of harm from" the decision to house an inmate with other dangerous

25   _____

26   [2] As discussed above, Vance and Walker were among many committee members who
     participated in the housing decision *sub judice*.  Plaintiff offers neither evidence nor argument
     explaining why Vance and Walker are responsible for the decisions of these committees;
27   however, for purposes of deciding the summary judgment motion, these findings and
     recommendations assume, without deciding, Vance and Walker are responsible for these
28   decisions.

1  inmates "changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm." Estate of

2  Ford, 301 F.3d at 1051.  Further, a prison official is entitled to qualified immunity for harm that

3  arises from a housing decision if "a reasonable officer in [the defendant's] position" would not

4  have known the decision "posed an excessive or intolerable risk of serious injury." Id. at 1052

5  (citing Farmer, 511 U.S. at 847 n.9).

6        For example, in Estate of Ford, the family and estate of an inmate who was killed by his

7  cellmate brought a failure-to-protect claim against the prison officials, arguing their decision to

8  house the decedent with a known "predator" was deliberately indifferent.  301 F.3d at 1047.  The

9  cellmate in Estate of Ford, Diesso, was "characterized as 'extremely violent and dangerous,'" was

10  involved in a number of attacks on guards and other inmates, "was designated a 'predator,'" he

11  "often requested to be celled with known homosexuals," and "wanted to cell with Ford but

12  [prison officials initially] did not allow it to happen." Id. at 1046.  The decedent, Ford, was

13  "widely known to [prison] staff as an effeminate homosexual," but was not "classified as a

14  'victim.'" Id. at 1046-47.  Two weeks before Ford was transferred to Diesso's cell, Diesso was

15  observed behaving strangely and was prescribed temporary medication.  Ford was transferred to

16  Diesso's cell, and, two days later, Diesso attacked and killed Ford. Id. at 1047.  "The walls of the

17  cell were covered with bloody handprints and smears, and the words 'die demon' were written in

18  blood on one wall." Id.  The district court concluded that genuine issues of material fact

19  precluded summary judgment whether defendants were deliberately indifferent to a substantial

20  risk of harm to Ford, and accordingly denied qualified immunity; the Ninth Circuit reversed. Id.

21  at 1048, 1051-53.  The court concluded the prison officials were entitled to qualified immunity:

22  "Although [defendants'] decision[s] to . . . allow Diesso to be double-celled with Ford turned out

23  to be quite unfortunate . . . , we cannot say that a reasonable correctional officer would have

24  clearly understood that the risk of serious harm was so high that he should not have authorized the

25  double-celling." Id. at 1051.

26        Here, the court finds that defendants Walker and Vance are entitled to qualified immunity

27  because the decision to house plaintiff, a SNY EOP inmate, with those general population EOP

28  inmates "that prison officials deemed capable of programming safely and effectively" (SUF ¶ 12),

1   at most, increased the risk of harm to plaintiff; however, this court cannot say "that a reasonable

2   correctional officer would have clearly understood that the risk of serious harm was so high that

3   he should not have authorized" plaintiff's housing in A-Facility.  Estate of Ford, 301 F.3d at

4   1051.[3]  The court notes that plaintiff's proffered evidence shows that plaintiff was coerced into

5   surrendering his SNY status by the threat of maximum security confinement and administrative

6   segregation, and that there exists a genuine dispute of material fact whether Vance and Walker

7   failed to follow prison procedures in this regard.  However, as the Ninth Circuit observed in

8   Estate of Ford, "[f]ailure to follow prison procedures" may establish "negligen[ce]; but

9   negligence, or failure to avoid a significant risk . . . 'cannot be condemned as the infliction of

10  punishment.'"  Id. at 1052 (quoting Farmer, 511 U.S. at 838).  Instead, plaintiff must show that a

11  reasonable officer in defendant's position would have realized the housing decision "posed an

12  excessive or intolerable risk of injury."  Id.

13      Here, defendants' proffered evidence shows that CSP-Sacramento prison officials were

14  forced to house SNY EOP Level IV inmates with GP EOP Level IV inmates because of the lack

15  of institutional resources.  Even though prison officials recognized the risks posed by housing GP

16  and SNY EOP inmates together, the record shows that the officials attempted to mitigate those

17  risks by only housing GP EOP inmates in A-Facility "that prison officials deemed capable of

18  programming safely and effectively."  (SUF ¶ 12.)  Cf. Turner v. Safley, 482 U.S. 78, 86 (1987)

19  ("[J]udgments regarding prison security 'are peculiarly within the province and professional

20  expertise of corrections officials, and . . . courts should ordinarily defer to their expert judgment

21  in such matters.'" (quoting Pell v. Procunier, 417 U.S., 827 (1974))).  While undoubtedly some

22  risk of harm to plaintiff persisted, this court cannot say a reasonable official in defendants'

23  position would have realized the "risk of *some* harm" amounted "to a *substantial* risk of *serious*

24  harm."  Estate of Ford, 301 F.3d at 1051; see also Pearson, 555 U.S. at 243-44 ("The principles of

25  qualified immunity shield an officer from personal liability when an officer reasonably believes

26

27  ─────────────────
    [3] See Pearson, 555 U.S. at 236 ("[J]udges of the district courts . . . [are] permitted to exercise their
    sound discretion in deciding which of the two prongs of the qualified immunity analysis should
28  be addressed first.").

1   that his or her conduct complies with the law.").

2         Therefore, the court finds that defendants are entitled to qualified immunity and

3   recommends that summary judgment on plaintiff's failure-to-protect claim asserted against

4   defendants Vance and Walker be GRANTED.

5         B.   Medical-Deliberate-Indifference Claim Against Moreland

6         Defendants move for summary judgment on plaintiff's medical-deliberate-indifference

7   claim asserted against defendant Moreland.  Plaintiff alleges that Moreland's "Deliberate

8   Indifference to Plaintiff's medical needs" constituted "Cruel and Unusual Punishment" under the

9   Eighth Amendment.  (SAC 17:20-23.)  Defendants argue summary judgment should be granted

10  because "Officer Moreland had no notice of a 'serious' medical need," and that plaintiff's

11  statement to Moreland that his "shoulder was 'really causing [him] severe pain,' . . . is

12  insufficient to establish a 'serious' medical need was known by Moreland."  (Mot. Summ. J. 9:11-

13  18 (citing Decl. M. Jennings 125, ECF No. 199).)  Plaintiff opposes arguing he informed

14  Moreland of his "serious medical needs," and "Moreland's failure to act violated . . . Plaintiff's

15  8th Amendment right[s]."  (Opp'n 6:27-7:4.)

16        "A defendant is liable for denying needed medical care only if he 'knows of and

17  disregards an excessive risk to inmate health and safety.'"  Lolli v. Cnty. of Orange, 351 F.3d

18  410, 419 (9th Cir. 2003) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir.

19  2002)).  A delay of medical treatment evinces deliberate indifference only if the delay caused

20  "significant harm and that Defendants should have known this to be the case."  Hallett v. Morgan,

21  296 F.3d 732, 745-46 (9th Cir. 2002).  Thus, the issue is whether plaintiff "presented evidence

22  from which a reasonable jury could conclude that" Moreland "knew of and w[as] deliberately

23  indifferent to [the] substantial risk of serious harm [plaintiff] faced if not properly treated."  Lolli,

24  351 F.3d at 420.

25        Here, the only evidence plaintiff points to in his opposition is his verified SAC, in which

26  he avers: "Plaintiff asked A.Moreland for medical attention," to which Moreland replied:

27  "There's nothing I can do."  (SAC 15:16-18.)  Moreland herself "does not recall that Plaintiff

28  requested medical attention at any time on August 12, 2007, nor does she recall that Plaintiff ever

1   showed her, or tried to show her, his shoulder injury." (SUF ¶ 29.) This factual dispute,

2   however, is immaterial because plaintiff has provided the court with insufficient evidence from

3   which a reasonable jury could conclude that Moreland, a nonmedical correctional officer, "knew

4   of the risk of harm that [plaintiff] faced if denied medical attention." Lolli, 351 F.3d at 421.

5   Here, the only evidence, plaintiff's request for medical attention, does not create a genuine

6   dispute of material fact that Moreland—a correctional officer without medical training—"was

7   subjectively aware of the risk to" plaintiff. Clouthier, 591 F.3d 1247. Thus, there is no genuine

8   dispute of material fact on the subjective component of the deliberate indifference test, because

9   no reasonable trier of fact could infer from the evidence that defendant Moreland "conscious[ly]

10  disregard[ed] . . . a serious risk of harm." Toguchi v. Chung, 391 F.3d 1051, 1059 (9th Cir.

11  2004).

12          Moreover, this conclusion is consistent with persuasive authority applying the deliberate

13  indifference standard to nonmedical prison personnel. In their motion for summary judgment,

14  defendants offer a Third Circuit case as persuasive authority for the proposition that "absent a

15  reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or

16  not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth

17  Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236

18  (3d Cir. 2004). (Mot. Summ. J. 9:25-10:12.) The court in Spruill reasoned: "If a prisoner is

19  under the care of medical experts . . . , a non-medical prison official will generally be justified in

20  believing that the prisoner is in capable hands." Spruill, 372 F.3d at 236. The undersigned finds

21  this reasoning persuasive. The record in this case establishes that plaintiff was an EOP inmate

22  receiving medication and medical supervision several times a day. Further, the undisputed facts

23  show that plaintiff was examined by medical personnel after the exercise yard altercation. Thus,

24  plaintiff's claim for medical deliberate indifference does not survive for the additional reason that

25  Moreland was justified in believing that plaintiff was in the "capable hands" of "medical experts"

26  in the EOP facility, negating the subjective component of "deliberate indifference." Id.

27          Therefore, the court, finding no genuine dispute of material fact, recommends that

28  summary judgment on plaintiff's medical-deliberate-indifference claim asserted against defendant

15

1   Moreland be GRANTED.

2   V.   Conclusion

3          Accordingly, IT IS HEREBY RECOMMENDED that defendants' supplemental motion

4   for summary judgment (ECF No. 214) be GRANTED.

5          These findings and recommendations are submitted to the United States District Judge

6   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7   after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

10  may address whether a certificate of appealability should issue in the event he files an appeal of

11  the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

12  court must issue or deny a certificate of appealability when it enters a final order adverse to the

13  applicant).  Any reply to the objections shall be served and filed within fourteen days after service

14  of the objections.  The parties are advised that failure to file objections within the specified time

15  may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

16  Cir. 1991).

17  Dated:  August 8, 2013

18                                                  _____
                                                    CAROLYN K. DELANEY
19                                                  UNITED STATES MAGISTRATE JUDGE

20

21

22
    GP
23  Jenn1305.MSJ

24

25

26

27

28

                                                  16